# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| IN RE FREGEAU, | ) | 15 C 01687 |
| Debtor. | ) | Judge Edmond E. Chang |

## MEMORANDUM OPINION & ORDER

Debtor James Fregeau appeals the bankruptcy court's order granting the Chapter 7 trustee's motion for turnover of a cashier's check for $141,000.[1] For the reasons discussed below, the bankruptcy court's order is affirmed.

## I. Background

On September 20, 2013, James Fregeau filed a voluntary petition for bankruptcy under Chapter 13. Dkt. 1, Voluntary Petition.[2] In his bankruptcy schedules, Fregeau listed a trading account at ABN AMRO with an approximate value of $40,000, but he noted that the "[e]xact value [was] difficult to ascertain [sic] because some trades are pending." Dkt. 10, Schedule B at 2. It turned out that at the time the petition was filed, the value of the trading account was actually $141,000. Dkt. 31, Motion to Vacate Turnover at 2. At some point after he filed his bankruptcy schedules, Fregeau withdrew all of the funds from the trading account. *Id.*

---

[1]The Court exercises subject-matter jurisdiction under 28 U.S.C. § 158(a)(1).
[2]For ease of reference, for documents first filed during the bankruptcy case, the Court cites to the bankruptcy court's docket entry number ("Dkt. [number]") from *In re Fregeau*, No. 13-38642 (Bankr. N.D. Ill.), followed by a description of the document in question. Citations to this Court's docket are noted as "R. [docket entry number]."

At the November 13, 2013 meeting of the creditors, Fregeau told the Chapter 13 trustees and his creditors the actual value of the trading account. Dkt. 23, Ch. 13 Mot. Turnover ¶¶ 3-4. Fregeau also told them that he had a cashier's check for the full amount. *Id*. Not surprisingly, the Chapter 13 trustee told him to hold onto the check until the Chapter 13 plan could be amended. *Id.* ¶ 5. The next day, the Chapter 13 trustee sent Fregeau a letter asking him to turn over the cashier's check by November 15. Dkt. 23-1, Nov. 14, 2013 Letter; Ch. 13 Mot. Turnover ¶ 6. When Fregeau failed to do so, one of his creditors moved for turnover of the funds. Ch. 13 Mot. Turnover ¶ 7 and Prayer for Relief. The day before the bankruptcy court was set to hear the motion, Fregeau's attorney moved to withdraw from the case. Dkt. 24, Mot. Withdraw. The bankruptcy court granted the motion to withdraw, and Fregeau was unrepresented at the turnover hearing. Dkt. 27, Order Granting Mot. Withdraw; R. 11, Appellant's Br. at 2. After the hearing, the bankruptcy court granted the motion to turn over the trading-account funds (now in the form of the cashier's check) to the Chapter 13 trustee. Dkt. 26, Order Granting Ch. 13 Mot. Turnover.

Shortly after the bankruptcy court's decision, Fregeau hired new counsel, who immediately moved to vacate the turnover order. Appellant's Br. at 2. In the motion to vacate, Fregeau claimed (apparently for the first time) that he could not turn over the $141,000 cashier's check because, sometime between the November 13, 2013 creditors' meeting and the November 22, 2013 turnover order, he had "negotiated it and … used the funds to attempt to win additional monies at a Las

Vegas casino." Mot. Vacate Turnover ¶ 11; Dkt. 97, Debtor's Resp. Chap. 7 Mot. Turnover at 1 (conceding that he had the cashier's check at the November 13, 2013 meeting). The bankruptcy court denied Fregeau's motion to vacate the turnover order. Dkt. 41, Order on Mot. Vacate Turnover.

Instead of making an attempt to enforce the order for turnover at that time, the Chapter 13 trustee moved to convert Fregeau's case into a proceeding under Chapter 7. Dkt. 36, Mot. Convert. The bankruptcy court ordered the conversion and appointed Appellee Peter Metrou as trustee for the Chapter 7 estate. Dkt. 50, Order Granting Mot. Convert; R. 12, Appellee's Resp. Br. at 3. After the conversion, Fregeau filed amended schedules and financial statements. In his amended schedules, he listed the full value of the ABN AMRO trading account as $141,000. Dkt. 59, Am. Schedule B at 1. In his statement of financial affairs, Fregeau also listed "[v]arious trading losses and gambling losses" from 2012 and 2013 whose "[v]alue [was] not yet determined." Dkt. 61, Am. Stmt. Fin. Affairs at 4.

In December 2014, the Chapter 7 trustee moved for turnover of the $141,000 cashier's check. Dkt. 89, Chap. 7 Mot. Turnover. Fregeau again responded that he could not turn over the check because he had already negotiated it and gambled away the proceeds. Debtor's Resp. Chap. 7 Mot. Turnover at 2-3. The bankruptcy court was not convinced. In the hearing on the motion for turnover, the court found that Fregeau's "bald statement" that he did not have the money was not credible in light of his amended schedules and financial statements. Dkt. 111, Hrg. Tr. at 4:2-13. The court concluded, therefore, that "the subject funds [were] still property of

the estate and, therefore, subject to turnover." *Id.* It granted the trustee's motion for turnover and entered judgment against Fregeau and in favor of the trustee "in the amount of $141,000." Dkt. 103, Order Directing Turnover and Judgment. Fregeau timely appealed from the bankruptcy court's order. R. 1, Notice of Appeal.

## II. Standard of Review

A federal district court has jurisdiction, under 28 U.S.C. § 158(a), to hear appeals from the rulings of a bankruptcy court. On appeal, the district court reviews the factual findings of the bankruptcy court under the clearly erroneous standard and reviews the bankruptcy court's legal findings de novo. W*iese v. Cmty. Bank of Cent. Wis.*, 552 F.3d 584, 588 (7th Cir.2009). The bankruptcy court's finding that Fregeau was in possession of the cashier's check is a finding of fact reviewed for clear error. Under that standard, an appellate court will not reverse simply because it would have decided the case differently; instead, a reviewing court must ask whether, considering all of the evidence, "it is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (internal quotation marks and citation omitted).

## III. Analysis

Ordinarily, the property of a bankruptcy estate is fixed as of the date the initial petition was filed. *See* 11 U.S.C. § 541; *In re Meyers,* 616 F.3d 626, 628 (7th Cir. 2010) (stating that under § 541, "the time of the petition (the 'commencement of the case[ ]') is the key point for identifying the assets of the estate") (internal citations omitted). This is the "fresh start" of bankruptcy; the assets of the estate as

4

of the filing date are used to pay the debtor's creditors, and the debtor emerges from bankruptcy with the debts discharged. *Matter of Paeplow*, 972 F.2d 730, 733 (7th Cir. 1992). Petitions under Chapter 13, however, are focused on voluntary debt repayment rather than liquidation. *In re Schaitz*, 913 F.2d 452, 453 (7th Cir. 1990). Chapter 13 allows a debtor with regular income to establish a plan in order to pay off his debts over time. *Id.*; 11 U.S.C. § 109(e) (requiring Chapter 13 debtors to have "regular income"). To that end, the bankruptcy estate in a case under Chapter 13 includes property of the debtor acquired after the filing of his petition.[3] 11 U.S.C. § 1306(a) (including in the estate "all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted"); *In re Willett*, 544 F.3d 787, 791 (7th Cir. 2008).

Because the Chapter 13 estate includes property acquired post-petition, it is often larger than a Chapter 7 estate would be. 3-348 COLLIER ON BANKRUPTCY ¶ 348.02. This expansion of the Chapter 13 estate once created problems for debtors whose cases under Chapter 13 were later converted to cases under Chapter 7. *See, e.g., In re Michael*, 699 F.3d 305, 314-16 (3d Cir. 2012). Conversion of a bankruptcy case from one chapter to another "does not effect a change in the date of the filing of the petition," 11 U.S.C. § 348(a), so it was unclear to courts whether post-petition property (which was included in the estate under Chapter 13) would remain part of the estate when the case was converted to Chapter 7 (for which the estate property is fixed as of the petition date), *see In re Stamm*, 222 F.3d 216, 217 (5th Cir. 2000)

---

[3]The Chapter 13 debtor also retains possession of the estate property before a plan is confirmed. 11 U.S.C. § 1306(b).

5

("[T]he issue of whether post-petition Chapter 13 income remains property of the estate on conversion to Chapter 7 was confusing and had created a circuit split.").

To address this issue, Congress added § 348(f)(1) to the bankruptcy code, which excludes property acquired post-petition property from the estate when a case is converted from Chapter 13 to another chapter: "[P]roperty of the estate in the converted case shall consist of property of the estate, as of the date of filing of the petition, that remains in the possession of or is under the control of the debtor on the date of conversion." 11 U.S.C. § 348(f)(1)(A); *see also* H.R. REP. 103-835, at 57 (1994), *reprinted in* 1994 U.S.C.C.A.N. 3340, 3366 (addressing the split among courts and noting concern about a "disincentive to chapter 13 filings"). Under this section, the estate of the converted case is "determined by the debtor's interest at the time the Chapter 13 case was filed, not when it was converted," just as if the debtor had originally filed a petition under Chapter 7. *Google, Inc. v. Central Mfg. Inc.*, 316 F. App'x 491, 495 (7th Cir. 2008). Property that was acquired after the petition was filed is generally returned to the debtor upon conversion to Chapter 7. *In re Stamm*, 222 F.3d at 217-18.

Although § 348(f)(1) is typically analyzed in the context of property acquired *after* the petition is filed, the issue in this case is not post-petition gains, but post-petition losses. Section 348(f)(1) defines the estate of a converted case as "property of the estate, as of the date of filing of the petition, *that remains in the possession of or is under the control of the debtor on the date of conversion.*" See 11 U.S.C. § 348(f)(1)(A) (emphasis added). Based on this language, property that was part of

6

the debtor's estate on the petition date does *not* become part of the converted estate if it is no longer in the debtor's possession or control when the case is converted (at least inasmuch as the dissipated property was lawfully used to pay for ordinary living or business expenses).[4] *See, e.g., In re Michael*, 699 F.3d at 313 n.5 (noting that "[n]ot all property will meet th[e] requirement [of § 348(f)(1)]. For example, a debtor whose title to particular property is terminated by a divorce decree while his Chapter 13 case is pending no longer has control of the property when the case is converted to Chapter 7") (citing *Yoon v. Krick*, 373 B.R. 593, 608 (Bankr. N.D. Ind. 2007)); *In re LaFlamme*, 397 B.R. 194, 205-06 (Bankr. D.N.H. 2008) ("Property of the Debtor's converted chapter 7 estate will … consist of the property in the chapter 13 estate on the Petition Date under § 541(a) less those amounts lawfully removed by the Debtor in good faith to pay ordinary and necessary living expenses during the period from the Petition Date to the Conversion Date.") Here, the parties agree that the $141,000 in the trading account was Fregeau's property on the date he filed the petition. *See* Appellant's Br. at 1; Appellee's Resp. Br. at 2. The question is

---

[4] There is some disagreement as to whether, assuming that Fregeau did gamble away the $141,000 prior to the second motion for turnover, the funds would be excluded from the estate under § 341(f)(1)(A). The trustee argues that allowing a debtor to wrongfully dissipate estate property and then avoid consequences when the case is converted would essentially provide a safe harbor for wrongdoing. *See* Appellee's Resp. Br. at 10-12. Such a rule, the trustee argues, would produce absurd results at odds with Congress's intention in amending the bankruptcy code. *See id.* The trustee's view finds support in some courts. *See Pagano v. Pergament*, 2012 WL 1828854, at *4-5 (E.D.N.Y. May 16, 2012); *In re Fobber*, 256 B.R. 268, 279 (Bankr. E.D. Tenn. 2000); *In re Pisculli*, 426 B.R. 52, 63 (E.D.N.Y. 2010), *aff'd* 408 F. App'x 477 (2d Cir. 2011)). But because the Court affirms the bankruptcy court's factual finding that Fregeau was in possession of the funds at the time the case was converted, it is not necessary to reach this question.

7

whether those funds "remain[ed] in the possession of or [ ] under the control of [Fregeau] on the date of conversion," and thus became part of the Chapter 7 estate.

The bankruptcy court found that the funds were still in Fregeau's possession at the time of conversion. In a hearing on the record, the bankruptcy court explained its reasoning for finding that Fregeau was still in possession of the funds. According to the court, the only support for Fregeau's claim that he gambled the $141,000 away was his own "bald statement." Hrg. Tr. at 3:25-4:9. This statement appeared only in Fregeau's pleadings, and was unsupported by any other evidence. *Id*. On the other hand, Fregeau's own amended schedules and financial statements contradicted his claim that he had gambled the money away. *Id*. In the amended financial statement, Fregeau had the opportunity to include the supposed gambling losses, and he did not. *Id*. ("The debtor's own sworn schedules did not support his claim that he lost the money gambling."). The bankruptcy court found that, based on this evidence, the trading-account funds were in Fregeau's possession and thus part of the estate (and subject to turnover). *Id*.

Looking at the "entire evidence," this Court is not "left with the definite and firm conviction that a mistake has been committed." *Easley*, 532 U.S. at 242 (internal quotation marks and citation omitted). On November 13, 2013, Fregeau testified under oath at the meeting of the creditors that he had the cashier's check in his possession. Appellant's Br. at 1; *see also* Fed. R. Bankr. P. 2003 (stating that the debtor will be examined under oath at the meeting of the creditors held under 11 U.S.C. § 341). By November 22, 2013, a little more than a week later, he claims

8

that he had gambled all of it away in Las Vegas. Mot. Vacate Turnover ¶ 11. Although Fregeau has repeatedly said (through his attorney in pleadings) that he gambled away the proceeds in that week, there is no record evidence supporting his statements. There is of course nothing wrong with offering evidence that is "self-serving"; much evidence offered by a party is of that type. But Fregeau did not even offer a sworn declaration to support the in-pleadings assertion, nor did he offer to testify under oath and under cross-examination an evidentiary hearing. And, here, when given the opportunity to report the purported gambling losses to the bankruptcy court through his amended schedules, Fregeau did not do so. Instead, he listed vague, unspecified gambling losses. Although Fregeau did imply that he had *some* gambling losses in his amended schedules, it is entirely reasonable to infer that his failure to specifically list substantial gambling losses (of funds that were already subject to turnover prior to conversion) in his sworn schedules undermines Fregeau's "bald statement" that he no longer had the funds. The bankruptcy court's determination that Fregeau was still in possession of the check at the time of the second motion for turnover is supported by the evidence in the record, and there is no basis on which to conclude that it was clearly erroneous.

Fregeau makes a related argument that the funds cannot be the subject of an order for turnover because an order to turnover funds that he does not have would be a "legal nullity." Appellant's Br. at 9. This argument also attacks the bankruptcy court's factual finding that Fregeau had not gambled away the funds. The bankruptcy court considered Fregeau's argument that "his dissipation [of the funds]

9

makes it impossible for him to comply with any order requiring turnover," and rejected it based on the same factual findings. Hrg. Tr. at 3:18-4:13 (discrediting Fregeau's "bald statement" that he gambled away the funds and concluding that the funds were "subject to turnover"). As discussed above, these findings are not clearly erroneous. So Fregeau's argument that the turnover order could not be entered because he did not have the property fails.[5]

In sum, the bankruptcy court's finding that Fregeau was in possession of the $141,000 on the conversion date and at the time for turnover are not clearly erroneous. The trading-account funds are therefore part of the converted Chapter 7 estate under § 348(f)(1) and are subject to turnover. The bankruptcy court's order directing turnover and entering judgment against Fregeau and in favor of the trustee "in the amount of $141,000" is affirmed.[6]

---

[5]And in any event, the bankruptcy court also entered a judgment against Fregeau and in favor of the trustee for the value of the trading account funds. *See* Order Directing Turnover and Judgment.

[6]In his response brief, the trustee asks this Court to, "as a practical matter, … uphold the Bankruptcy Court's judgment directing turnover of the Proceeds <u>and</u> entering judgment in favor of the Trustee and against the Debtor for the cash value of the Proceeds." Appellee's Resp. Br. at 14 (emphasis in original). The use of the phrase "as a practical matter" and the emphasis on both forms of relief make Appellee's final request somewhat unclear. The bankruptcy court's order appears to have both granted the motion for turnover of the funds and entered a judgment against Fregeau and in favor of the trustee "in the amount of $141,000." Order Directing Turnover and Judgment; *see also* Hrg. Tr. at 4:22-25 ("The trustee's motion for turnover is granted, and judgment will be entered in favor of the trustee and against the debtor in the amount of $141,000."). If the trustee is simply asking this Court to affirm the entirety of the bankruptcy court's order, that request is granted.. But, to the extent the trustee is asking the Court to enlarge his rights under the bankruptcy court's order, the request is denied. Without a cross-appeal by the trustee, this Court can only affirm the judgment of the court below. *See Ill. School Dist. Agency v. Pac. Ins. Co.*, 571 F.3d 611 (7th Cir. 2009) ("The appellee may not, in the absence of a cross-appeal, attack the decree with a view either to enlarging his own rights thereunder or of lessening the rights of his adversary.").

## IV. Conclusion

For the reasons stated above, the bankruptcy court's order for turnover of the assets [Dkt. 103] is affirmed.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: June 26, 2015